**Opinion issued March 21, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-08-00137-CR

————————————

## JAMES WALLACE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court at Law No. 13
Harris County, Texas
Trial Court Case No. 1458312

## MEMORANDUM OPINION

Following a jury trial, appellant James Wallace was convicted of unlawful restraint. He was sentenced to one years' confinement, probated for two years.

Appellant appeals here challenging the sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

This case arises out of an incident between appellant and the complainant, Sonja Ervin. Ervin and appellant lived together for ten years and are the parents of a young daughter. The couple stopped living together around May 2007. They still owned a restaurant together called Too Too's Southern Cooking.

On the morning of June 3, 2007, appellant arrived at the restaurant about 7:00 a.m. Ervin testified that the restaurant's back door was open and appellant was in the kitchen when Ervin arrived later with their daughter. Ervin first got her daughter settled into a side room in the restaurant, and then she went into the bathroom to put on her makeup. Appellant followed her to the bathroom and asked her to reconcile. Ervin testified that, at some point, appellant "kind of got forceful and aggressive" asking her to have sex, and he pulled on her and tried to unbutton her slacks. To avoid appellant, Ervin insisted that she had to check on their daughter. Appellant let Ervin leave the bathroom and go to her daughter's room. In her daughter's room, Ervin called her sister Alexia to help her get out of the restaurant and the situation with appellant. At trial, appellant disputed this version of events, testifying instead that he confronted Ervin about her having an affair

2

with someone else and that he was at the restaurant to break up with her and tell her she could keep the restaurant.

Alexia arrived shortly after Ervin called her. Appellant went out the back door to meet her when Alexia pulled up. Alexia and appellant immediately got into a verbal altercation near the back door. During this, Ervin was going in and out of the back door, first trying to calm them both down and then trying to get her daughter from inside so that she could leave with her sister. Both Ervin and Alexia testified that after Ervin handed her sister her purse, appellant yanked on Ervin and pulled her inside the restaurant.

The restaurant has only two operable doors to the outside, and both doors have deadbolt locks requiring a key to lock or unlock them from either side. Ervin testified that when appellant pulled her into the restaurant through the back door, the front door was already locked. Appellant then locked the back door from the inside with his key. He testified that he locked the door because Alexia was trying to hit him with a stick. Appellant called 911 from inside the restaurant in hopes that would make Alexia leave.

While waiting for the police to arrive, appellant went in and out of the front door of the restaurant. According to Ervin, each time he stepped outside the restaurant, he locked the front door. Ervin testified that she asked appellant to let her out of the building, but that he ignored her and refused. She had no way out

3

because there were burglar bars on the windows, both the doors were locked, and she did not have her keys. Officer C. Huff arrived, and appellant stepped out through the front door to talk to him. While appellant was outside, Ervin eventually called 911 and told the dispatcher that she was locked inside the building and that appellant was outside. She then began screaming out through one of the windows to appellant and another officer on the scene, Officer S. Sauls, requesting that someone come let her out of the building. Officer Sauls testified that he asked appellant why Ervin was yelling, and appellant responded that "she claims that she doesn't have a key to get out of the place." When Officer Sauls asked appellant why he would lock Ervin in the restaurant when he knew she did not have a key to get out, "he didn't actually have an answer to that."

By this time, a police dispatcher had also called Officer Sauls to let him know that Ervin had called 911 about being locked in the building. Officer Sauls then sent appellant to go unlock the back door and let Ervin and their daughter out of the building.

Appellant was charged with misdemeanor offense of unlawful restraint. A jury found appellant guilty, and the court sentenced him to one year in the Harris County Jail probated for two years of community supervision with ten days in the Harris County Jail as a condition of the community supervision. Appellant appealed.

## SUFFICIENCY OF THE EVIDENCE

Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, in his first point of error, he challenges the sufficiency of the evidence that he used force to restrain Ervin. In his second point of error, he challenges the sufficiency of the evidence that any such restraint was done intentionally or knowingly.

### A. Standard of Review

We review a challenge to the legal sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the

5

acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency-of-the-evidence standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (stating jury is sole judge of credibility of witnesses and weight to give their testimony). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *see also Clayton*, 235 S.W.3d at 778 (reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination").

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. In determining the sufficiency of the evidence, a reviewing court examines "whether the necessary inferences are reasonable based

upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (*quoting Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused." *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

## B. Applicable Law

A person commits unlawful restraint if that person "intentionally or knowingly restrains another person." TEX. PENAL CODE ANN. § 20.02(a) (Vernon 2011). In this context, "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). Restraint is without consent if it is accomplished by "force, intimidation, or deception." *Id.* § 20.01(1)(A).

## C. Analysis

In appellant's first point of error, he contends there is insufficient evidence of "force" to demonstrate that any restraint was without consent. He acknowledges that lack of consent can be proven with evidence of "force, intimidation, or deception," but argues that our analysis must be restricted to whether there was

7

evidence of "force" because the application section of the jury's charge limited the jury's consideration to force. It provided:

> Therefore, if you believe from the evidence beyond a reasonable doubt that on or about June 3, 2007, in Harris County, Texas, the defendant, JAMES WALLACE, did intentionally or knowingly restrain SONJA ERVIN, hereinafter called the Complainant, without the Complainant's consent, **namely, by force**, said restraint being by restricting the movement of the Complainant so as to interfere substantially with the Complainant's liberty by confining the Complainant, you will find the defendant guilty.

He then contends that there "is no evidence that appellant used force against the complainant or threatened to use force against the complainant." According to appellant, there is evidence—at most—that Ervin feared that appellant "might" use force, which is insufficient to show force was used.

The State responds that the evidence that appellant forcibly pulled Ervin into the restaurant, locked her inside, and ignored her repeated requests to be set free is sufficient to demonstrate the requisite force. We agree. *See Barnes v. State*, No. 05-00-01047-CR, 2001 WL 493440, at *1 (Tex. App.—Dallas May 10, 2001, pet. ref'd) (mem. op., not designated for publication) (evidence that defendant locked complainant in building and refused to unlock door or allow complainant to leave while defendant attempted to persuade complainant to sign document was sufficient to support unlawful restraint conviction); *cf. Glenn v. State*, No. 05-99-00723-CR, 2000 WL 226365, at *4 (Tex. App.—Dallas 2000, Feb. 29, 2000, no pet.) (not designated for publication) (holding trial court's failure to charge jury on

8

lesser-included-offense of unlawful restraint in kidnapping trial was reversible error because defendant's version of events, i.e., that he locked van doors and would not let wife out of van despite knowing she desired to leave could support jury finding that he was guilty of only unlawful restraint and not kidnapping).

Appellant cites *Cook v State*, Nos. 03-08-00718-CR & 03-08-00719-CR, 2009 WL 3230790 (Tex. App.—Austin Oct. 9, 2009, pet. ref'd) (mem. op., not designated for publication) in support of his argument that "any fear that appellant might do something violent because he had used force against [Ervin] in the past does not constitute evidence that appellant used force to restrain" her in this incident. *Cook*, however, addressed a different issue, and is not on point here.

In *Cook*, while the defendant was on the run from police, he broke into the complainant's apartment. 2009 WL 3230790, at *1. He did not threaten the complainant while he hid out there waiting for his girlfriend to pick him up, but he refused to let her leave, instead insisting that she "sit down and be quiet." *Id*. at *2. At one point, the defendant displayed a knife for "ten or fifteen seconds before placing it in his pocket," which scared the complainant. *Id*. Among other things, defendant was convicted of unlawful restraint, and the trial court made a finding that while complainant was restrained, defendant recklessly exposed her to a "substantial risk of serious bodily injury." *Id*. at *8. That finding elevated the

unlawful restraint conviction from a misdemeanor to a third degree felony under section 20.02(c)(2)(A) of the Texas Penal Code. *Id.*

The Austin Court of Appeals held that there was legally insufficient evidence to support the trial court's enhancement finding. *Id.* ("We decline to hold that the exhibition of a knife, even by a seemingly unstable individual, is sufficient by itself to recklessly expose a victim to a substantial risk of serious bodily injury."). The court thus reformed the judgment to reflect a misdemeanor conviction for unlawful restraint without the enhancement. *Id.* at *9.

Although appellant in this case cites *Cook*'s analysis, appellant did not receive an enhancement, so the analysis is simply inapposite. The reformed judgment in *Cook* resulted in a conviction for unlawful restraint on similar facts to those presented here; namely, a defendant confining a complainant to the inside of a building and denying requests to be set free. Nothing in *Cook* supports appellant's position that such facts cannot support a finding of force.

Here, the evidence that appellant physically pulled Ervin into the restaurant, locked the only exits, and repeatedly ignored her requests that he unlock the doors and allow her to leave is sufficient evidence that he restrained her, i.e., "restrict[ed] [her] movements without consent, so as to interfere substantially with [her] liberty, . . . by confining [her]." TEX. PENAL CODE § 20.01(1). While appellant asserts that there was only evidence of Ervin's "fear that appellant 'might' use force, we

conclude that the evidence that appellant physically pulled her into the restaurant and then confined her there by employing locks making it impossible for her to escape is not evidence of fear that force *might be used*, but instead is evidence that force *was used*.

We overrule appellant's first point of error.

In his second point of error, appellant challenges the sufficiency of the evidence that he "intentionally or knowingly" restrained Ervin. Specifically, appellant asserts that he was not aware that Ervin did not have her keys to let herself out of the restaurant until he and Officer Sauls heard her yelling that she was locked inside the restaurant. According to appellant, because "there is no evidence in the record to support a finding beyond a reasonable doubt that appellant knew that [Ervin] did not have a key to the restaurant, . . . there is no proof that appellant intentionally and knowingly restrained" her. We disagree.

The jury is the exclusive judge of the facts, the credibility of witnesses, and the weight given the witnesses' testimony. *Van Dalen v. State*, 789 S.W.2d 334, 335 (Tex. App.—Houston [14th Dist.] 1990, no pet.). The jury can choose to believe or not believe a witness or any portion of his or her testimony. *Id.* (citing *Penagraph v. State*, 623 S.W.2d 341 (Tex. Crim. App. 1981)).

Here, while appellant argues that he thought Ervin could let herself out of the building, there is ample evidence from which the jury could instead infer that

11

appellant intended to confine Ervin to the building. Ervin testified that appellant locked her inside and repeatedly ignored her requests to be let out from which the jury could infer appellant's awareness that she did not have a key to let herself out. Officer Sauls testified that appellant told him that Ervin "claim[ed] that she didn't have a key to get out," which directly contradicts appellant's claim that there is no evidence that he was aware that Ervin did not have a key. Because there is some evidence of appellant's intent to confine Ervin within the building, we will not disturb the jury's resolution of any conflicting evidence about appellant's intent.

We overrule appellant's second point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).